IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAROL H. TICE,                              )
                                            )
                    Plaintiff,              )
                                            )
          v.                                )          Civil Action No. 06-1719
                                            )
BRISTOL-MYERS SQUIBB COMPANY,               )
                                            )
                    Defendant.

<u>MEMORANDUM OPINION</u>

CONTI, District Judge

Pending before this court is a motion for summary judgment (Doc. No. 5) filed by

defendant Bristol-Myers Squibb Co. ("Bristol-Myers" or "defendant").  Plaintiff Carol Tice

("plaintiff") filed this civil action asserting two counts.  Count one sets forth claims under the

Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("ADEA"), and the

Pennsylvania Human Relations Act, 43 P.S. §954(b) ("PHRA").[1]  Plaintiff, while admitting to

violating a company policy of Bristol-Myers asserts that fellow employees under the age of forty

engaged in the same activity, yet were not subject to disciplinary measures.  Because plaintiff  is

over the age of forty and was disciplined, i.e., terminated for allegedly engaging in activity for

which other employees were not similarly disciplined, plaintiff claims she was discriminated

against on the basis of her age.

---

[1]The standards under the ADEA and the PHRA are the same and will therefore be
decided and discussed together.  <u>See</u> <u>Kautz v. Met-Pro Corp.</u>, 412 F.3d 463, 465 (3d Cir. 2005).

Count two sets forth claims for violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq. ("Title VII") and the PHRA, 43 P.S. §955.[2]  With respect to these claims plaintiff alleges that male employees engaged in the same activity for which plaintiff was terminated; yet, the male employees were not terminated for the same behavior.  Plaintiff alleges that Bristol-Myers violated Title VII when it terminated her for violations of its company policy, but failed to take similar actions against its male employees.

Bristol-Myers moves for summary judgment with respect to plaintiff's claims on the theory of issue preclusion or collateral estoppel, arguing that dispositive factual issues before this court were previously adjudicated and resolved in a prior federal administrative hearing that was separate from the statutory framework for Title VII and ADEA claims.  Bristol-Myers asserts that plaintiff is precluded from relitigating those factual issues here.  Plaintiff argues that no factual finding by an administrative agency, whether state or federal, may ever be given collateral estoppel effect in a Title VII or ADEA case.  This court finds the doctrine of issue preclusion will be applicable when a material fact at issue in a Title VII or ADEA case was litigated and resolved in a final decision rendered in an action filed under Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX"), a whistleblowers' protection provision.  Congress has provided that, with respect to a SOX claim, when a final order of the Secretary of Labor could have been reviewed by a court of appeals, that order cannot be judicially reviewed in any other civil proceeding.  18 U.S.C. § 1514A(b)(2) (SOX action is governed by rules and procedures in 49 U.S.C. § 42121(b)(4), which provides a limitation on collateral attack); 29 C.F.R. §

---

[2]The standards under Title VII and the PHRA are the same and will therefore be discussed and decided together.  See Woodson v. Scott Paper Co., 109 F.3d 913, 919 (3d Cir. 1997) (applying Title VII analysis to PHRA claim).

1980.112(a).  Here, the decision of the administrative law judge became the final order of the

Secretary of Labor and review of that order by a court of appeals could have been obtained.

Under these circumstances plaintiff is collaterally estopped from relitigating the factual issues

resolved by the ALJ and summary judgment will be granted in favor of defendant.

### *Factual Background*

The factual background is derived from the undisputed evidence of record and the

disputed evidence of record viewed in the light most favorable to the nonmoving party.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  ("The evidence of the nonmovant is

to be believed, and all justifiable inferences are to be drawn in his favor").

In July 1986, plaintiff  began her employment with a predecessor of Bristol-Myers as a

pharmaceutical sales representative.  In 1997, plaintiff was promoted to a cardiovascular

specialty position.  (Pl. Ex. 1 at 21).  In July 2003, she was given the additional title of Senior

Business Manager.  (Def. Ex. 2 at 12).

 In early 2004, two employees complained to plaintiff's manager, Harry Broadus

("Broadus"), that plaintiff was reporting sales calls outside of her territory.  These employees

complained that plaintiff recorded sales calls that she had not actually made.  (Id. at 417-18).  In

December 2004, the same two employees again informed Broadus that plaintiff was still

reporting calls on physicians outside of her territory.  (Id. at 448).  Also in December 2004, a

separate department, the sample reconciliation group, notified Broadus that plaintiff had an issue

with reconciliation of samples of the drug "Coumadin."  The sample reconciliation group

informed Broadus that three or four cases of the drug, for which plaintiff was responsible, were

missing.  (Id. at 160).  On December 14, 2004, a meeting took place between Broadus and

plaintiff.  (Id. at 403).  During this meeting, plaintiff admitted to Broadus that she had falsified

sales call reports by recording sales calls on doctors with whom she had not actually met.  (Id. at

407-09).  Broadus, in turn, informed plaintiff that disciplinary measures would likely be taken

with respect to the reconciliation problems identified by the sample reconciliation group.

Broadus further informed plaintiff that he notified Kathleen Allard ("Allard"), regional vice

president of sales, about the falsified sales call reports.  Broadus advised plaintiff that the call

reporting issue was under investigation.  (Id. at 167-69).  In a memorandum dated December 14,

2004, Broadus memorialized the conversation between plaintiff and himself and forwarded the

memorandum to Allard.  (Id. at 218).

    In response to the December 14, 2004 memorandum, plaintiff prepared a memorandum

dated December 18, 2004, requesting a meeting with Allard.  In that memorandum, plaintiff

alleged:  1)  a belief that Broadus and other personnel retaliated against her because of a previous

sexual harassment claim; 2) a belief that Broadus may have improperly perceived her as not

being able to do her job because of a medical condition;[3] and 3) her concern regarding

appropriate business ethics as it related to the accurate reporting of daily sales calls and the

pressure placed upon sales representatives to misrepresent the number of sales calls.  A copy of

plaintiff's memorandum was sent to Kathryn Santos-Tharney ("Santos-Tharney"), human

resources generalist.  (Def. Ex. C-5).  Allard contacted Santos-Tharney and advised her not to

contact plaintiff regarding the allegations made in her December 18, 2004 memorandum.  Allard

advised Santos-Tharney to allow human resources to investigate the allegations.  (Def. Ex. 2 at

_____

    [3]While it is unclear from the record what plaintiff's medical condition was, her medical
condition is not relevant here because she does not assert any claims regarding discriminatory
treatment based upon her previous medical condition.

215, 247).  Because the allegations involved possible company violations, Santos-Tharney notified Kathleen McElarney ("McElarney"), an employee relations investigator.  (Id. at 308).

In January 2005, Santos-Tharney and plaintiff discussed the issues and concerns raised in plaintiff's memorandum on the telephone.  (Pl. Ex. 1 at 82).  On February 10, 2005, plaintiff had a telephone conversation with McElarney, who was in charge of investigating the allegations in plaintiff's memorandum.  (Id. at 312).  Plaintiff and McElarney discussed the allegations in plaintiff's memorandum.  Plaintiff explained the nature of her previous sexual harassment claim, again admitted to having falsified sales call reports, and indicated that other Bristol-Myers employees also falsified sales call reports.  Plaintiff did not provide McElarney with names of any alleged offenders (Def. Ex. 2 at 329) and did not provide examples of how Broadus had treated her differently due to her medical condition.  (Id. at 312-14).

In addition to the telephone conversation between McElarney and plaintiff concerning plaintiff's memorandum, McElarney interviewed Broadus about the allegations.  (Id. at 318-19). McElarney determined that plaintiff's accusations of retaliation related to her previous claim for sexual harassment and discriminatory treatment based upon her medical condition were unfounded.  (Id. at 346, 349).  In addition, McElarney confirmed that plaintiff falsified sales calls without being asked to do so.  (Id. at 319).  Based upon this information, on March 2, 2005, McElarney prepared a memorandum recommending that plaintiff be terminated for falsifying sales call reports.  (Id. at 321).  The act of falsifying sales call reports is a violation of Bristol-Myers's Code of Conduct, which provides in pertinent part:

<u>       Immediate Termination</u>

Certain violations of this Code of Conduct result in immediate termination  for cause (i.e., without severance).  Examples include, but are not limited to,  the following:

Falsification of any company document, including call reports and expense reports.  Falsification of call reports includes, but is not limited to, reporting  a call on a date other than the date on which the calls was made. . . .

(Def. Ex. R14 at 18).  Plaintiff was terminated on April 13, 2005.  (Def. Ex. 2 at 299).

On May 12, 2005, plaintiff filed a complaint with the United States Department of Labor's Occupational Safety and Health Administration ("OSHA"), alleging that Bristol-Myers violated SOX.  (Def. Ex. 1 at 1).  Plaintiff claimed that she was terminated for engaging in protected activity.  The alleged protected activity consisted of plaintiff's admission to having falsified sales call reports and her reporting that other Bristol-Myers employees had done the same.  In essence, plaintiff alleged in her SOX claim that the protected activity was the reporting of company violations.  Plaintiff claimed that because she reported that undisclosed employees of Bristol-Myers, as well as herself, falsified call reports, Bristol-Myers terminated her. Additionally, plaintiff claimed that management at Bristol-Myers was pressuring sales representatives into falsifying sales call reports.  (<u>Id.</u> at 2).

SOX provides for whistleblowers' protection, enumerating certain lawful behavior which is protected.  SOX protects employees who provide information to their employer about what the employees reasonably believe constitutes a violation of various federal statutes protecting shareholders and ensuring integrity within the corporate structure.  18 U.S.C. §1514A.

Following an investigation, OSHA found no reasonable cause to believe that Bristol-Myers violated SOX.  OSHA determined that plaintiff's purported protected activity (i.e. providing information about what she felt was unethical activity) was not a factor in her termination.  (Def. Ex. 1 at 2).  On November 4, 2005, plaintiff, objecting to OSHA's findings, sought a hearing before an administrative law judge (the "ALJ").  A hearing was granted.  The hearing took place over three days from January 30, 2006 through February 1, 2006.  (Id.).

During the administrative hearing, the ALJ considered several issues.  These issues were explicitly itemized in the ALJ's written opinion and included:

(1)  Does Bristol-Myers qualify as a company covered by SOX?
(2)  Was Carol Tice an employee of Bristol-Myers on the date of the protected activity?
(3)  Was Tice engaging in protected activity under SOX?
(4)  If Tice engaged in protected activity as an employee of Bristol-Myers, was Bristol-Myers aware of the protected activity?
(5)  Did Tice suffer unfavorable personnel actions?
(6)  If Tice engaged in protected activity as an employee of Bristol-Myers, and Bristol-Myers was aware of the protected activity, did the protected activity contribute to the decision by Bristol-Myers to terminate Tice?
(7)  If Tice established a violation of the employee protection provisions of SOX, did Bristol-Myers demonstrate by clear and convincing evidence that it would have disciplined Tice or terminated her even in the absence of the protected activity?

(Id. at 3-4).

Prior to the administrative hearing, plaintiff and defendant conducted full discovery. During the administrative hearing, McElarney, Broadus and plaintiff testified under oath and were subject to cross-examination by opposing counsel.  (Def. Ex. 2 at 11, 214, 403).  A court reporter was present and all testimony obtained during the hearing was recorded.  Additionally, counsel for each party submitted legal briefs and presented closing arguments before the ALJ.

On April 26, 2005, the ALJ issued his decision, which was explained in a detailed written opinion.  (Def. Ex. 1 at 1-2).

In addition to the aforementioned enumerated issues set forth by the ALJ, three material factual disputes were considered during the administrative hearing.  These factual disputes were discussed at length in the ALJ's opinion.  First, the ALJ addressed plaintiff's allegations that management pressured employees to misrepresent sales call data.  Next, the ALJ addressed plaintiff's allegations that other Bristol-Myers' representatives falsified their respective sales call reports.  Finally, the ALJ addressed plaintiff's admission that she falsified sales call reports.  (Id. at 18, 20, 21).

On the first of these issues, the ALJ determined that plaintiff could not objectively believe that any conduct on the part of Bristol-Myers or its employees served as a directive to falsify sales call reports.  Plaintiff did not offer any evidence that any Bristol-Myers official directed her to falsify sales call data or compelled her to do so.  (Id. at 19).  Therefore, the ALJ concluded that there was no specific conduct by Bristol-Myers constituting fraud against shareholders.  (Id. at 19).

On the second and third issues, the ALJ found that plaintiff's allegations failed to meet the materiality standard necessary for an employee to reasonably believe fraudulent activity was taking place.  The materiality standard requires a complainant's belief of fraudulent misconduct to be based upon significant and material information concerning a corporation's financial condition in order to be considered a reasonable belief.  (Id. at 21).  During the administrative hearing, the only falsified sales call reporting plaintiff testified about was that engaged in by Greg Lane, an employee who left Bristol-Myers prior to plaintiff's reporting the falsification of the call

reports.  (Id. at 21-22, 45).  The ALJ concluded that such a minimum showing of false sales call reporting did not meet the materiality standard outlined by SOX.  Essentially, the ALJ concluded that it was unlikely that Bristol-Myers could have benefitted financially from falsified sales call reports on only two doctors by two sales representatives.  The ALJ found that plaintiff's allegations were not material or significant enough for her to have reasonably believed that Bristol-Myers was engaged in fraudulent behavior that violated any federal securities regulations.[4]

With respect to the second issue whether other Bristol-Myers' representatives falsified call reports, the ALJ specifically resolved factual disputes relating to the reasons for plaintiff's termination.  (Id. at 23).  The ALJ found that plaintiff's reporting of falsified call reports was not a contributing factor to her termination; rather, plaintiff was terminated because she falsified call reports.  The ALJ concluded that "the [plaintiff] was terminated for the act of falsifying calls, not for the reporting of doing so." (Id. at 25).  The ALJ found that Bristol-Myers demonstrated by clear and convincing evidence that it would have terminated plaintiff even in the absence of any protected activity.  (Id. at 26).  The ALJ determined that Bristol-Myers consistently adhered to its policy regarding the firing of employees who file false reports and terminated employees who falsified call reports.  (Id. at 26).  In reaching the decision that Bristol-Myers acted according to its policy by terminating plaintiff for falsifying call reports, the ALJ noted the absence of any

---

[4]Bristol-Myers had a co-promotion arrangement with Sanofi, a pharmaceutical manufacturer, under which it would theoretically be financially beneficial to Bristol-Myers if it appeared sales representatives were making more sales calls (promoting Sanofi's medications) than they actually were.  The ALJ, however, concluded that the false reports on two physicians were not material enough to misrepresent significantly the financial condition of the company to shareholders.

discriminatory intent on the part of Bristol-Myers when determining whether to terminate

plaintiff. (Id. at 24). Plaintiff admits that the factual findings of the ALJ are not disputed. (Doc.

No. 19, Joint Concise Statement of Material Facts at 51-55). Plaintiff, however, argues that those

facts are not material by reason of de novo review arguably being required and because plaintiff

asserts that "the practice of falsifying sales call records was a common and well-known practice

among the defendant's sales personnel, and was condoned and accepted by [d]efendant's

managerial staff." (Id.) Plaintiff did not appeal the ALJ's decision which then became "the final

order of the Secretary of Labor . . . pursuant to 29 C.F.R. § 1980.109(c)." Id. at 51. The

assertion of plaintiff regarding the condoning and accepting of false call reports by defendant was

raised and found to be without merit by the ALJ. (Def. Ex. 1 at 26).[5]

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if,

drawing all inferences in favor of the nonmoving party, "the pleadings, deposition, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[5]The ALJ stated:

> In addition to being consistently documented, the evidence shows that the policy was consistently practiced. Ms. Allard testified that it is standard for Bristol-Myers to terminate a sales representative it finds to have falsified. (TR 254, 277, 292). Ms. McElarney testified that she had never recommended anything but termination upon finding falsification. (TR 322-23). Additionally, the complainant indicated she was aware of the policy contained in the documents. (RX 16, RX 17, TR 137-40). Therefore, in terminating the Complainant for falsifying sales call reports, the Respondent acted to enforce an explicit policy of which the Complainant was aware. As in *Halloum,* this constituted clear and convincing evidence that it would have taken the same action in the absence of an alleged protected activity.

(Def. Ex. 1 at 26)(footnote omitted).

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  Id at 249.  The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1ˢᵗ Cir. 1993) (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2721); Pollack v. City of Newark, 147 F. Supp. 35, 39 (D. N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert.denied, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

## Discussion

### I.     *Elements of Claims at Issue and Burdens of Proof*

With respect to her claim under the ADEA, plaintiff did not adduce direct evidence of age discrimination.  In cases where there is no direct evidence of discrimination, the United States Court of Appeals for the Third Circuit applies the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Barber v. CSX Distribution Services, 68 F.3d 694 (3d Cir. 1995).  Under this analysis, a plaintiff must first establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  Once a prima facie case has

been established, the burden of production – but not the burden of persuasion – shifts to the

employer.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Simpson v. Kay

Jewelers, 142 F.3d 639, 644 n.5 (3d Cir. 1998).  At this point the employer must produce some

evidence of a nondiscriminatory reason for its actions.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d

Cir. 1994).  If evidence of a nondiscriminatory reason is produced, a plaintiff may survive

summary judgment by producing evidence "from which a factfinder could reasonably either (1)

disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action."  Id. at 764.

Title VII was enacted to prohibit employers from discriminating against employees with

respect to compensation, terms, conditions, or privileges of employment.  Texas Dept. of Cmty.

Affairs v. Burdine, 450 U.S. 248, 259 (1981).  The McDonnell Douglas framework also applies

to plaintiff's Title VII claim.  In McDonnell Douglas, the Supreme Court developed the now

familiar burden-shifting framework for courts to utilize as a tool in analyzing disparate treatment

claims.  The McDonnell Douglas framework requires a plaintiff alleging a violation of Title VII

to first establish a prima facie case of discrimination.  The prima facie case, the elements of

which depend upon the kind of claim the plaintiff is alleging, "eliminates the most common

nondiscriminatory reasons for the plaintiff's rejection."  Burdine, 450 U.S. at 254; see also Id. at

n.6.  In so doing, "the prima facie case 'raises an inference of discrimination only because we

presume these acts, if otherwise unexplained, are more likely than not based on the consideration

of impermissible factors.'"  Id.

12

If the plaintiff successfully demonstrates a prima facie case of discrimination, the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision.  Simpson, 142 F.3d at 644 n.5. The burden on the defendant at this junction is "relatively light," and the defendant can satisfy this burden "by introducing evidence which, *taken as true*, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. . . . "  Fuentes v. Perskie, 32 F.3d at 763 (emphasis added)(citations omitted).

Once the defendant offers a legitimate nondiscriminatory reason for the challenged conduct at issue, "'the McDonnell Douglas framework - with its presumptions and burdens' - disappear[s], . . .  and the sole remaining issue [is] 'discrimination *vel non*,'. . . ." Reeves v. Sanderson Plumbing Products., Inc., 530 U.S. 133 (2000) (citations omitted).  The plaintiff, thus, has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.  Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).

As discussed above, the McDonnell Douglas burden-shifting framework applies to plaintiff's ADEA claim as well as her Title VII claim.  Here, arguably plaintiff can establish a prima facie case for age discrimination and sex discrimination.  The burden of production then shifts to defendant to show a legitimate non-discriminatory reason for her termination. Defendant asserts that plaintiff was fired for filing false call reports which violated a company policy.  That reason suffices to meet defendant's burden of production and plaintiff must therefore show that defendant's stated reason was not its true reason, but rather  was a pretext for discrimination.  Defendant argues that plaintiff cannot meet that burden because another federal

13

tribunal in resolving plaintiff's SOX claim found that defendant consistently adhered to its policy of firing individuals who file false call reports and that plaintiff was fired for filing false call reports.

## II.   *Issue Preclusion*

The doctrine of issue preclusion or collateral estoppel[6] has been utilized for more than a century.  Issue preclusion is based upon the premise, "that once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed."  Parklane Hosiery v. Shore, 439 U.S. 322, 336 (1979).  "[It] has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy, by preventing needless litigation."  Id. at 326.  Issue preclusion has long been recognized by the United States Supreme Court and was explained by Justice Harlan in Southern Pacific Railroad v. United States, 168 U.S. 1 (1897).  There, Justice Harlan stated:

> [T]he general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.  This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination.  Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

Id. at 48-49 (emphasis added).

_____

[6]The phrase "issue preclusion" and "collateral estoppel" are used interchangeably by courts in contexts like that present here and will be likewise used interchangeably in this opinion.

The United States Court of Appeals for the Third Circuit has applied the doctrine of collateral estoppel.  See Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567 (3d Cir. 2002); Witkowski v. Welch, 173 F.3d 192, 199 (3d Cir. 1999); Hawksbill Sea Turtle v. FEMA, 126 F.3d 461, 475 (3d Cir. 1997).  "The doctrine [of collateral estoppel] reduces the costs of multiple lawsuits, facilitates judicial consistency, conserves resources, and 'encourages reliance on adjudication.'"  Witkowski at 199 (quoting Allen v. McCurry, 449 U.S. 90 (1980)).

The Court of Appeals for the Third Circuit has recognized four requisite criteria to determine whether the doctrine of collateral estoppel should be utilized:  1) the issue decided in the prior adjudication must be identical to the issue presented in the later action; 2) there must be a final decision on the merits in the prior adjudication; 3) the party against whom the doctrine is asserted must have been a party, or in privity with a party, to the prior adjudication, and; 4) the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the precise issue in the previous action.  Greenleaf v. Garlock, Inc. 174 F.3d 352, 357-58 (3d Cir. 1999), see In re Docteroff, 133 F.3d 210, 214 (3d Cir. 1997) (recognized that the Restatement (Second) of Judgments § 27 (1982) explicitly lists elements that would prevent a party from relitigating an issue, which are: 1) the issue sought to be precluded must be the same as the one involved in the prior action; 2) the issue must have actually been litigated; 3) the issue must have been determined by a valid and final judgment; and  4) the determination must have been essential to the prior judgment).  A threshold question for this court is whether a federal administrative law judge's decision may be given preclusive effect.

### III.  *Preclusive Effect of Agency Determinations*

It is well settled that preclusive effect may be given to judgments of bodies other than

courts of law.  Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991) (unless

contrary to legislative intent, collateral estoppel should be applied to decisions of administrative

bodies that have attained finality); Univ. of Tennessee v. Elliott, 478 U.S. 788, 797 (1986)

(unless contrary to legislative intent, judgments of administrative agencies acting in a judicial

capacity should be given preclusive effect); United States v. Utah Constr. and Mining Co., 384

U.S. 394, 422 (1966) ("when an administrative agency is acting in a judicial capacity and

resolved disputed issues of fact properly before it which the parties have had an adequate

opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").

The Astoria decision extended the doctrine of issue preclusion to the adjudications of

both state and federal agencies: "the principle [of collateral estoppel] holds true when a court has

resolved an issue, and should do so equally when the issue has been decided by an administrative

agency, be it state or federal, which acts in a judicial capacity." Astoria, 501 U.S. at 108.  The

Supreme Court not only held that state and federal agency determinations can have preclusive

effect, but that the adjudications of both should be accorded equal weight.  "Since there is no

reason to believe federal enforcement agencies are any less competent than their state

counterparts, it would be anomalous to afford more deference to one than the other." Id. at 113.

Essentially, courts consider the overall nature of the proceedings at the administrative

level.  If the proceedings provided the parties a full and fair opportunity to litigate the issues in

question, the doctrine of issue preclusion is applicable.  Allen v. McCurry, 449 U.S. 90, 95

(1980).  In Utah Construction, the Court set forth fairness requirements that a court must

16

consider before finding that an administrative agency's decision has preclusive effect on a later

filed action.  These "fairness" requirements include determining whether 1) the administrative

agency acted in a judicial capacity; 2) the agency resolved disputed issues of fact properly before

it; and 3) the parties had an adequate opportunity to litigate.  Utah Constr., 384 U.S. at 422.

Courts of appeals have reached similar conclusions when determining whether an

administrative agency's decision has a preclusive effect on cases filed in courts of law.  See  In re

McNallen, 62 F.3d 619, 624 (4th Cir. 1995) (preclusion appropriate provided the party against

whom a decision of an administrative proceeding was asserted enjoyed a full and fair opportunity

to litigate an issue in an earlier proceeding); Miller v. County of Santa Cruz, 39 F.3d 1030, 1032-

33 (9th Cir. 1994) (common law rules of preclusion should be applied to administrative

adjudications of legal and factual issues, even if unreviewed, as long as the fairness requirements

of Utah Construction are satisfied); Delamater v. Schweiker, 721 F.2d 50, 53 (9th Cir. 1983) ("An

action taken by an administrative agency to grant or deny a benefit is not an adjudicated action

unless the agency has made its decision using procedures substantially similar to those employed

by the courts.").  Each of these courts analyzed whether the fairness requirements outlined in

Utah Construction were met.  Where the requirements of Utah Construction are met, the agency

determinations are given preclusive effect.  McNallen, 62 F.3d at 624; Miller, 39 F.3d at 1032-

33; Delamater, 721 F.2d at 53.  Since administrative decisions may have preclusive effect in

some circumstances, this court must next determine whether the ALJ's decision qualifies for

application of issue preclusion.

Plaintiff had previously filed a complaint with OSHA asserting, among other things, that

Bristol-Myers terminated her for engaging in protected activity.  After OSHA reached its

17

decision, plaintiff objected to its findings and was granted a hearing before the ALJ. The administrative proceedings, including the hearing and the decision of the ALJ, were judicial in nature and meet the standard outlined in <u>Utah Construction</u>.

First, the hearing had all the trappings of a judicial proceeding. The proceeding was adversarial in nature. Plaintiff was represented by counsel. Full discovery was conducted. Witnesses, including Broadus, McElarney and plaintiff, testified under oath and were subject to cross-examination by opposing counsel. Closing arguments and legal briefs were submitted on behalf of both parties, and the presiding judge wrote a reasoned opinion.

One issue resolved by the ALJ was that Bristol-Myers proved by "clear and convincing" evidence that plaintiff was fired because she falsified call reports. This standard is higher than the preponderance of the evidence burden that would be required during a trial of plaintiff's Title VII and ADEA claims. Notably, plaintiff has never asserted that she was deprived of a full and fair opportunity to litigate the factual issues raised in her original claim. Under these circumstances this court concludes that the administrative hearing at issue here qualifies as an "administrative agency acting in a judicial capacity" for preclusion purposes. <u>Utah Constr.</u>, 384 U.S. at 422.

## IV.   *Application of the Doctrine of Issue Preclusion*

As noted there are four criteria that must be present for issue preclusion to be applicable: 1) the issue was decided in a prior adjudication;  2) there was a final decision on the merits in the prior adjudication; 3) the party against whom the doctrine is asserted must have been a party to the prior adjudication, and; 4) that party must have had a full and fair opportunity to litigate the

18

precise issue in the prior litigation.  Greenleaf, 174 F.3d at 357-58.  Each of those criteria must

be examined.

### a. *Identity of Issues*

The court must determine whether the factual issues plaintiff seeks to assert in this court

were previously litigated.  If the same question of fact that plaintiff seeks to litigate here was

litigated in the administrative hearing, then for preclusion purposes, that issue of fact would be

identical for purposes of issue preclusion.  In Raytech Corp. v. White, 54 F.3d 187 (3d Cir.

1995),  the United States Court of Appeals for the Third Circuit addressed the manner in which

courts can determine whether there is an identity of issues.  There, the court held that in order for

issues to be considered different for purposes of preclusion, the difference in the issues must be

substantial.  Id. at 191.  The court noted that identifying the precise issue in question is the most

effective way to determine whether use of the doctrine of collateral estoppel is appropriate.  Id.

The claim plaintiff litigated in the prior administrative proceeding and the claims in the

case *sub judice* are distinct claims.  In the prior proceeding, plaintiff asserted a violation of SOX.

There, plaintiff alleged that she was terminated for reporting violations of Bristol-Myers's

company policy.  Plaintiff claimed that reporting to Bristol-Myers conduct which involved

falsification of call reports was protected activity under SOX.  Here, plaintiff alleges that Bristol-

Myers violated Title VII and the ADEA when it terminated her for engaging in activity engaged

in by younger or male employees who were not terminated.  While at first blush these claims

appear to be distinct, upon closer analysis, it is clear that none of those claims would have merit

if Bristol-Myers' stated reason for firing plaintiff – her filing of false call reports – was true and

not a pretext.

Pinpointing the precise factual issues is imperative for determining whether the doctrine of issue preclusion is applicable in a particular case.  As the Court opined in <u>Southern Pacific Railroad</u>, any fact distinctly put at issue between the parties and determined by a trier of fact cannot subsequently be disputed.  <u>Southern Pacific R.R.</u>, 168 U.S. at 48.  Thus, although plaintiff's claims in the prior administrative proceeding and this case may appear to be distinct claims, the doctrine of issue preclusion may still be applicable.  If a fact directly at issue and decided in plaintiff's prior administrative hearing is now being litigated in the instant case, use of issue preclusion is appropriate.  <u>Id.</u>

The factual issues presented during the administrative hearing required the ALJ to determine the reason for plaintiff's termination by Bristol-Myers.  The ALJ concluded that Bristol-Myers terminated plaintiff for falsifying sales call reports.  The ALJ also determined that defendant consistently adhered to its policy of firing employees who filed false reports.  Those factual findings are dispositive in this case because plaintiff cannot recover on her claims in this case unless she can show that defendant's stated reason for her termination was pretextual.

 Here, plaintiff claims that defendant's reason for her termination was pretextual and that she was terminated because of her age or her sex.  The issue whether defendant's reason was pretextual was previously decided in the administrative hearing.  The ALJ determined that Bristol-Myers' stated reason was accurate – plaintiff was terminated because she falsified call reports.  The ALJ further determined that termination was a form of discipline consistently used and practiced by Bristol-Myers in cases of an employee falsifying sales call reports.  Plaintiff is attempting to relitigate whether the stated reason for her termination was pretextual.  In essence, plaintiff is  seeking a second opportunity to litigate an issue that she previously, and

unsuccessfully, litigated.  If plaintiff is able to pursue the factual issues here, after she was given a full and fair opportunity to litigate those issues in a prior proceeding, she will have a "rematch after a defeat fairly suffered." Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. at 107.  In essence plaintiff will be able to attack the final decision of the Secretary of Labor collaterally in a district court, rather than directly on appeal from an order of the Secretary of Labor to a court of appeals as contemplated by SOX.  18 U.S.C. § 1514A(b)(2); 49 U.S.C. § 42121, 29 C.F.R. § 1980.112(a).

### b. *Final Decision*

With respect to the prior proceeding involving the SOX claim, it is clear that plaintiff did not appeal or seek review of the order of the Secretary of Labor and that decision became final. Under these circumstances the criteria of a decision being final is met in this case.

### c. *Same Parties*

There is no question that defendant and plaintiff were parties to the OSHA proceedings involving the SOX claim and are the parties here.  Under these circumstances the criteria that the party against whom this doctrine is asserted must have been a party to the prior proceeding is met.

### d. *Full and Fair Opportunity to Litigate*

Plaintiff does not dispute that she had a full and fair opportunity to litigate the issues in question during the prior OSHA proceedings or that the nature of the OSHA proceedings before the ALJ were judicial in nature.  Under these circumstances, it must be concluded that the criteria of a full and fair opportunity to litigate the issues in question during the prior proceeding is met.

***IV.  Title VII, ADEA and SOX claims in the Context of Issue Preclusion***

The specific matter to be resolved in this summary judgment motion has not been directly addressed by the Supreme Court, the United States Court of Appeals for the Third Circuit or any other court of appeals.  This court must address whether factual findings in a final decision involving a SOX claim may be collaterally reviewed in a subsequent federal case involving Title VII and ADEA claims.

Plaintiff argues that, notwithstanding a conclusion that issue preclusion could be applicable to this case, she is entitled to de novo review of the ALJ's decision because her claims arise under Title VII and the ADEA.  Plaintiff relies on Elliott and Astoria to support her contention.  Defendant argues that those decisions are distinguishable because the Court in those decisions addressed whether decisions of the Equal Employer Opportunity Commission ("EEOC") or a state agency – not a federal administrative agency like in this case which is outside the statutory scheme of the instant federal claims – can be given preclusive effect.

In Elliott, the United States Supreme Court, basing its decision on the language of Title VII, held that a plaintiff is entitled to a de novo trial after the EEOC or a state agency reached a determination on the same set of facts.  The Court explained that given the statute's directive for the EEOC to "give substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law warranted that conclusion."  Univ. of Tennessee v. Elliott, 478 U.S. at 795 (quoting 42 U.S.C. §2000e5)(bracketed language in original).  The Court held it would be illogical for this provision to exist if administrative adjudications by the EEOC or local or state agencies were entitled to preclusive effect.  Elliott, 478 U.S. at 795.  The Court stated:

> The question actually before us is whether a common-law rule of preclusion
> would be consistent with Congress' intent in enacting Title VII. . . . . [W]e
> conclude that the Sixth Circuit correctly held that Congress did not intend
> unreviewed state administrative proceedings to have preclusive effect on Title VII
> claims.

Id. at 796.  The Court noted that whether the individual voluntarily "requested the administrative

hearing rather than being compelled to participate in it," (id. at 796 n.5), was not relevant

because "the legislative history of Title VII manifests a congressional intent to allow an

individual to pursue independently his rights under both Title VII and other applicable state and

federal statutes."  Id. (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 48 (1974)).  The

reason for not permitting issue preclusion when Title VII claims are involved has been described

as follows:  "Preclusion is denied because of the statutory provisions that require the Equal

Employment Opportunity Commission to defer while state agencies have an opportunity to act,

and that require only that the EEOC accord 'substantial weight' to the state-agency findings."

18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE

AND PROCEDURE § 4471.3 at 329 (2d ed. 2002).  Also, it has been noted that:

> Denial of preclusion in Title VII and Age Discrimination in Employment
> cases reflects respect for the relationship between state and federal
> agencies established by these specific statutory schemes, not doubts about
> the general preclusion rule.

Id. at 364.

In Astoria, the Supreme Court held that courts do not have free reign to impose rules of

preclusion.  Astoria, 501 U.S. at 108.  The Court reasoned that legislative intent is the most

significant factor in determining the appropriateness of applying preclusion.  "[T]he question is

not whether administrative estoppel is wise but whether it is intended by the legislature."  Id.

The Court opined that the result reached in Elliott with respect to a Title VII claim would be applicable to an ADEA claim.  The Court noted:

> Section 14(b) requires that where a State has its own age-discrimination law, a federal [ADEA] complainant must first pursue his claim with the responsible state authorities before filing in federal court.

Id. at 111

> [Section] 14(b) suffices to outweigh the lenient presumption in favor of administrative estoppel, a holding that also comports with the broader scheme of the [ADEA] and the provisions for its enforcement. Administrative findings with respect to the age-discrimination claims of federal employees enjoy no preclusive effect in subsequent judicial litigation . . . and since there is no reason to believe federal enforcement agencies are any less competent than their state counterparts, it would be anomalous to afford more deference to one than the other.

Id. at 112-13 (citations omitted).  Thus, a claimant is entitled to de novo review of ADEA claims that had been reviewed by a state agency.  Id. at 108.  Here, defendant argues Astoria is not applicable because no state agency is involved; rather the OSHA proceedings involving the SOX claim are not part of the statutory framework of the Title VII or ADEA claims raised in this case and arguably warrants a different conclusion.  This court, however, notes that the issue here presents a somewhat different quandary for a district court:  What should be the outcome here when a federal statute such as SOX requires repose when a final order of the Secretary of Labor could have been – but was not – appealed to a circuit court of appeals?

The other decisions cited by plaintiff generally stand for the proposition that a plaintiff is entitled to de novo review of Title VII and ADEA claims when the administrative body which issued the first decision on the merits of those claims was part of the statutory scheme of the plaintiff's federal claim or was a state agency or a federal agency applying a federal statutory

24

scheme which Congress has not precluded from being subject to collateral attack   See Chandler

v. Roudebush, 425 U.S. 840 (1976) (plaintiff, a federal employee, entitled to de novo review

after having exhausted her administrative remedies with the Civil Service Commission); Roth v.

Koppers Indus., Inc., 993 F.2d 1058, 1061 (3d Cir.1993) (plaintiff barred from using favorable,

unreviewed decision by state unemployment compensation board);  Duggan v. Bd, of Educ. of

East Chicago Heights, 818 F.2d 1291 (7th Cir. 1987) (plaintiff granted de novo review;

unreviewed factual findings of state administrative agency not entitled to preclusive effect in

Title VII or ADEA cases); Rosenfeld v. Dep't of Army, 769 F.2d 237, 239 (4th Cir. 1985) ("Prior

administrative findings [whether federal or state], whatever result may be reached, are ordinarily

not entitled to preclusive effect in a subsequent discrimination suit, even though the same facts

are in dispute.")

     In Roth v. Koppers Industries Inc., 993 F.2d 1058 (3d Cir. 1993), the court considered

whether unreviewed state administrative findings may be given preclusive effect in a Title VII

case.  In reaching its decision, the court noted:  "Following Elliott, the courts of appeals have

unanimously concluded that unreviewed administrative agency findings can never be accorded

preclusive effect in subsequent Title VII proceedings."  Id. at 1062.  In Roth, the court held that

ruling is equally applicable to offensive and defensive attempts to use unreviewed state

administrative findings.  Id.; see Caver v. City of Trenton, 420 F.2d 243, 259 (3d Cir. 2005)

(Elliott "prohibits the use of collateral estoppel to give an unreviewed state and administrative

determination preclusive effect in a Title VII action").

     While the Supreme Court and the United States Court of Appeals for the Third Circuit

have not directly addressed whether unreviewed findings of federal agencies that are not part of

the Title VII or ADEA statutory schemes could ever be given preclusive effect, the breath of the language utilized in Elliott and Roth suggests their holdings would be applicable to unreviewed findings of federal agencies.  See Gergick v. Austin, 997 F.2d 1237, 1238 (8th Cir. 1993) (unreviewed federal administrative findings in a Whistleblower Protection Act, 5 U.S.C. § 1221(a), case is not entitled to preclusive effect in a Title VII case, citing Astoria and Elliott); Rosenfeld v. Dept. of Army, 769 F.2d 237, 239 (4th Cir. 1985) (no preclusive effect given to unreviewed findings of a federal administrative agency: "Whether the prior administrative findings be those of the Civil Service Commission, the EEOC, or any other federal agency is immaterial.") (emphasis added).  The quandary for this court, however, is that despite the breath of the language, the Supreme Court in Elliott and Astoria found that Congress' intent was significant in determining whether collateral estoppel should be applicable in a Title VII or ADEA case.  The Supreme Court did not address whether collateral estoppel would be applicable to Title VII or ADEA claims if the facts at issue where resolved under a federal statutory scheme, like SOX, which has a stated legislative intent that preclusive effect must be afforded to unreviewed administrative findings.

Congress in SOX, 18 U.S.C. § 1514A(b)(2)(A), provided: "In general.  An action under paragraph (1)(A) [the action involved in plaintiff's SOX claim] shall be governed under the rules and procedures set forth in section 42121(b) of title 49, United States Code."  49 U.S.C. § 42121(b) provides in relevant part:

(2) Investigation; preliminary order.
   (A) In general. Not later than 60 days after the date of receipt of a complaint filed under paragraph (1) and after affording the person named in the complaint an opportunity to submit to the Secretary of Labor a written response to the complaint and an opportunity to meet with a representative of the Secretary to

26

present statements from witnesses, the Secretary of Labor shall conduct an investigation and determine whether there is reasonable cause to believe that the complaint has merit and notify, in writing, the complainant and the person alleged to have committed a violation of subsection (a) of the Secretary's findings. If the Secretary of Labor concludes that there is a reasonable cause to believe that a violation of subsection (a) has occurred, the Secretary shall accompany the Secretary's findings with a preliminary order providing the relief prescribed by paragraph (3)(B). Not later than 30 days after the date of notification of findings under this paragraph, either the person alleged to have committed the violation or the complainant may file objections to the findings or preliminary order, or both, and request a hearing on the record. The filing of such objections shall not operate to stay any reinstatement remedy contained in the preliminary order. Such hearings shall be conducted expeditiously. If a hearing is not requested in such 30-day period, the preliminary order shall be deemed a final order that is not subject to judicial review.

   (B) Requirements.

      (i) Required showing by complainant. The Secretary of Labor shall dismiss a complaint filed under this subsection and shall not conduct an investigation otherwise required under subparagraph (A) unless the complainant makes a prima facie showing that any behavior described in paragraphs (1) through (4) of subsection (a) was a contributing factor in the unfavorable personnel action alleged in the complaint.

      (ii) Showing by employer. Notwithstanding a finding by the Secretary that the complainant has made the showing required under clause (i), no investigation otherwise required under subparagraph (A) shall be conducted if the employer demonstrates, by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior.

      (iii) Criteria for determination by Secretary. The Secretary may determine that a violation of subsection (a) has occurred only if the complainant demonstrates that any behavior described in paragraphs (1) through (4) of subsection (a) was a contributing factor in the unfavorable personnel action alleged in the complaint.

      (iv) Prohibition. Relief may not be ordered under subparagraph (A) if the employer demonstrates by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior.

(3) Final order.

   (A) Deadline for issuance; settlement agreements. Not later than 120 days after the date of conclusion of a hearing under paragraph (2), the Secretary of Labor shall issue a final order providing the relief prescribed by this paragraph or denying the complaint. At any time before issuance of a final order, a proceeding under this subsection may be terminated on the basis of a settlement agreement entered into by the Secretary of Labor, the complainant, and the person alleged to have committed the violation.

   (B) Remedy. If, in response to a complaint filed under paragraph (1), the Secretary of Labor determines that a violation of subsection (a) has occurred, the Secretary of Labor shall order the person who committed such violation to--

     (i) take affirmative action to abate the violation;

     (ii) reinstate the complainant to his or her former position together with the compensation (including back pay) and restore the terms, conditions, and privileges associated with his or her employment; and

     (iii) provide compensatory damages to the complainant.

  If such an order is issued under this paragraph, the Secretary of Labor, at the request of the complainant, shall assess against the person against whom the order is issued a sum equal to the aggregate amount of all costs and expenses (including attorneys' and expert witness fees) reasonably incurred, as determined by the Secretary of Labor, by the complainant for, or in connection with, the bringing the complaint upon which the order was issued.

  (C) Frivolous complaints. If the Secretary of Labor finds that a complaint under paragraph (1) is frivolous or has been brought in bad faith, the Secretary of Labor may award to the prevailing employer a reasonable attorney's fee not exceeding $ 1,000.

(4) <u>Review.</u>

  (A) <u>Appeal to Court of Appeals.</u> <u>Any person adversely affected or aggrieved by an order issued under paragraph (3) may obtain review of the order in the United States Court of Appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred or the circuit in which the complainant resided on the date of such violation.</u> The petition for review must be filed not later than 60 days after the date of the issuance of the final order of the Secretary of Labor. Review shall conform to chapter 7 of title 5, United States Code [5 USCS §§ 701 et seq.]. The commencement of proceedings under this subparagraph shall not, unless ordered by the court, operate as a stay of the order.

  (B) <u>Limitation on collateral attack.</u> <u>An order of the Secretary of Labor with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding.</u>

49 U.S.C. § 42121(b)(2)-(4) (emphasis added).  OSHA regulations, 29 C.F.R. § 1980.112(a),

adopted under SOX echo the provisions of 49 U.S.C. § 42121(b)(4), which were incorporated by

Congress into SOX:

   a) Within 60 days after the issuance of a final order by the Board (Secretary) under 1980.110, <u>any person adversely affected or aggrieved by the order may file a petition for review of the order in the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation. A final order of the Board is not subject to judicial review in any criminal or other civil proceeding.</u>

29 C.F.R. § 1989.112(a)(emphasis added).  The only exception to the preclusive effect of an

unreviewed Secretary of Labor order is if the Secretary did not issue a final decision within 180

days of the filing of the complaint.  18 U.S.C. § 114A(b)(1)(B).  Under that limited exception,

the claimant may file an action and obtain de novo review in a district court.  Id.

Congress has clearly indicated its intent that final orders of the Secretary of Labor (here

the decision of the ALJ which became the final order of the Secretary of Labor) for which review

could have been obtained by an appeal to a court of appeals cannot be collaterally attacked.

Since the legislative intent to preclude collateral attacks on final orders of the Secretary of Labor

in SOX actions – like that of the ALJ here –  is clear, this court is constrained to find that the

findings of the ALJ which are dispositive of plaintiff's Title VII and ADEA claims cannot be

collaterally attacked here.

The factual findings in issue were made by a federal administrative agency that is part of

the statutory framework for a SOX claim.  Plaintiff was not required by any statutory provision to

file initially her SOX claim with OSHA before seeking redress for her Title VII or ADEA claim.

Plaintiff filed a complaint with OSHA voluntarily and subsequently sought review of that finding

by the ALJ.  After the ruling by the ALJ, plaintiff did not appeal the matter to the Administrative

Review Board, making the ALJ's decision the final order of the Secretary of Labor.  If plaintiff

had sought review of the decision of the Secretary of Labor, she would have sought review by a

court of appeals.  She, however, did not do so and by statute she is precluded from collaterally

attacking the final order of the Secretary of Labor.  Plaintiff filed her Title VII and ADEA claims

with the EEOC and exhausted her administrative remedies.  Plaintiff now seeks to assert sex and

age discrimination claims under Title VII and the ADEA in this district court which if she were to prevail would be a collateral attack on the findings made with respect to her SOX claim.

In this case, plaintiff sought redress in federal court after the OSHA decision became final based upon the same set of facts, but with new federal claims.  As previously discussed, the decisions involving agencies such as the EEOC giving weight to state agency findings are inapposite here because OSHA is a federal agency which is not a part of the statutory scheme of Title VII and ADEA and factual issues in SOX claims that have been finally resolved in OSHA proceedings are not subject to collateral attack.  The basic tenets of collateral estoppel are satisfied in this case and  this court concludes that the doctrine of issue preclusion must be applied in this case, otherwise this court would violate 18 U.S.C. § 1514A(b)(2), 49 U.S.C. § 42121(b)(4)(B) and 29 C.F.R. § 1980.112(a).  Under these circumstances, plaintiff may not relitigate the truthfulness of defendant's stated reason for her termination or whether defendant consistently followed its policy and fired employees, like plaintiff, who filed false call reports.

## Conclusion

The rationale behind usage of the theory of collateral estoppel or issue preclusion is well accepted.  It eases the backlog of cases that exist on the dockets of all courts by keeping issues that have already been resolved at rest.  Further, it serves as an aid to judicial fairness, preventing parties who have previously litigated and factual issues from having to relitigate those very same issues which have already been proved.

In this case, plaintiff was afforded a full and fair opportunity to litigate during a federal administrative proceeding that was not part of the statutory framework of a Title VII or ADEA claim, but rather was part of the statutory framework of a SOX claim.  The factual issues whether

30

defendant's stated reason for firing her was truthful and whether defendant consistently followed its policy and fired employees who filed false reports were determined with respect to plaintiff's SOX claim in a final order of the Secretary of Labor.  The prior administrative proceeding was of a judicial nature, consisting of full discovery, testimony under oath by witnesses, cross-examination of witnesses, oral arguments and briefs presented by competing sides, and a reasoned opinion written by an administrative law judge.  During the administrative hearing, material issues were whether Bristol-Myers' stated reason for terminating plaintiff was truthful and whether it consistently followed its policy and fired employees, like plaintiff, who filed false reports.  Those issues were actually litigated and the ALJ determined that plaintiff was fired because she falsified sales call reports.  Bristol-Myers proved this fact by clear and convincing evidence.  The ALJ also found that defendant consistently followed its policy of firing employees who falsified reports.  Simply put, plaintiff was terminated because she violated company policy. Plaintiff  now seeks to place the same factual issues which were resolved in connection with her SOX claim at issue.  Plaintiff, however, is precluded by statute from collaterally attacking the decision which became the final order in her SOX claim.  All requirements for use of the doctrine of issue preclusion are met and this court must conclude that plaintiff cannot relitigate those factual issues.  Use of the doctrine of collateral estoppel is appropriate under these specific circumstances involving a final order of the Secretary of Labor in a SOX claim by reason of the statutory prohibition on collateral attack of that order.  Summary judgment will be granted in defendant's favor.

By the court,


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge


Dated: September 13, 2007

cc: Counsel of Record